# IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 15-00029 |
| Plaintiff, | |
| vs. | **ORDER AND DECISION RE MOTION FOR A JUDGMENT OF ACQUITTAL** |
| AMBROSIO D. CONSTANTINO, JR., | |
| Defendant. | |

This matter is before the court on the Defendant's Motion for a Judgment of Acquittal. *See* ECF No. 157. The Defendant contends that the evidence presented at trial was insufficient to sustain a conviction for theft of government property and aggravated identity theft. For the reasons set forth below, the motion is **DENIED**.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On May 27, 2015, the Defendant was indicted on Count 1, Theft of Government Property, in violation of 18 U.S.C. §§ 641 and 2; and Count 2, Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2. *See* ECF No. 1.

This case arises out of a program called the Guard Recruiting Assistance Program ("G-RAP"), which provides a $2,000 referral bonus to a Recruiter Assistant ("RA") for every guard recruit. The program is administered by a company called Document and Packaging Brokers, Inc. ("Docupak"), who is contracted by the U.S. Army National Guard Bureau.

The case proceeded to trial on January 21, 2016. At the close of the Government's case,

1

the Defendant moved the court for a judgment of acquittal pursuant to FED. R. CRIM. P. 29(a). *See* ECF No. 119. The court found that the evidence was sufficient to sustain a conviction on the counts charged in the Indictment and denied the motion. At the close of all the evidence, the Defendant renewed his motion, which this court also denied. *See* ECF No. 124.

## II. DISCUSSION

The Defendant now moves this court for judgment of acquittal pursuant to FED. R. CRIM. P. 29(c). *See* ECF No. 157.

After the return of a guilty verdict and upon motion of a defendant, the court may set aside the verdict and enter an acquittal if the "evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29. To determine whether the evidence is sufficient to sustain a conviction, the court must "construe the evidence 'in the light most favorable to the prosecution,' and only then determine whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). *See also United States v. Meredith*, 685 F.3d 814, 819 (9th Cir. 2012). Moreover, the jury's exclusive function is to "determine the credibility of the witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts." *United States v. Nelson*, 419 F.2d 1237, 1241 (9th Cir. 1969). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1188 (9th Cir. 1992).

In the present motion, the Defendant challenges the sufficiency of the evidence. *See* ECF No. 157. Specifically, the Defendant argues that the United States failed to present evidence "that the property stolen belonged to the United States." *Id.* at 1. Further, because "a finding of guilt as to Count 1 of the Indictment is a necessary predicate to a finding of guilt as to Count 2, a failure to prove Count 1 necessarily destroys Count 2." *Id.*

### a. Count 1: Theft of Government Property

In order for the Defendant to be found guilty of Count 1, Theft of Government Property, the court instructed the jury that the Government had to show beyond a reasonable doubt, that:

(1) First, from on or about January 26, 2010 until on or about May 31, 2010, the defendant knowingly stole or converted to defendant's use of money with the intention of depriving the owner of the use or benefit of the money;

(2) Second, the money belonged to the United States; and

(3) Third, the value of the money was more than $1,000.

*See* ECF No. 128, at 11.

The Defendant is not contesting the sufficiency of the evidence as to elements 1 and 3. *See generally* Def.'s Mot., ECF No. 157. Accordingly, the court will only address element 2, which is whether or not the United States presented evidence beyond a reasonable doubt that the money belonged to the United States.

The Defendant argues that the evidence presented at trial "supports the proposition that the property *when stolen* belonged to Docupak, not the United States." ECF No. 157, at 5 (emphasis in original). This is based on Mr. William Stewart's testimony that the $2000 recruitment bonuses paid to the RAs were directly from Docupak's funds. *Id.* at 2-4. Docupak thereafter submits an invoice to the United States for reimbursement. *Id.*

Pursuant to section 641, the stolen property must be a "record, voucher, money, or thing of value *of the United States* or of any department or agency thereof." 18 U.S.C. § 641 (emphasis added). To determine that the property at issue belonged to the United States, the court looks to two things: (1) the government's "title to, possession of, or control over" the funds involved (*see United States v. Kranovich*, 401 F.3d 1107, 1113 (9th Cir. 2005) (internal quotations omitted)); and (2) the amount of control the government has retained over the funds. *United States v. Faust*,

3

850 F.2d 575, 579 (9th Cir. 1988) (internal quotations omitted).

In the present case, evidence was presented that the government had an ownership interest in the money disbursed to the Defendant. Mr. William Stewart ("Mr. Stewart"), Deputy Program Manager for Docupak, testified at trial that the National Guard approached Docupak to create a program to recruit soldiers, and worked closely with Docupak to develop the program. Trial Tr. at 12-13, Jan. 22-28, 2016. Docupak and the National Guard then entered into an agreement to run G-RAP. *Id.* at 96.

As part of the agreement, Mr. Stewart testified that Docupak made payments to successful RAs. *Id.* at 29. After successful accessions or individuals shipping to basic training, Docupak invoiced the National Guard. *Id.* at 208. The National Guard would then send money to Docupak. *Id*. at 296-97. These facts prove that the funds disbursed to the Defendant were a "thing of value" belonging to the government within the meaning of § 641. *Faust*, 850 F.2d at 579.

Furthermore, there was evidence that the government maintained substantial control over the funds. In finding that the government suffered a loss of a thing of value under § 641, the "key factor" is the supervision and control over the thing of value contemplated and manifested on the part of the government. *United States v. Johnson*, 596 F.2d 842, 846 (9th Cir. 1979) (internal quotations omitted); *see also United States v. Scott*, 784 F.2d 787, 791 (7th Cir. 1986).

In the present case, the "Solicitation, Offer and Award" between the Army National Guard, National Guard Bureau Contracting Office and Docupak was admitted into evidence. *See* Gov't Ex. 12 ("the Contract"). The Contract contains provisions for supervision, control and approval of Docupak's activities. Docupak was required to submit a plan to follow the Federal Government's small business participation goals to maximize small business subcontractor and vendor participation in the Contract. Gov't Ex. 12(a), p. 1. Docupak was also required to submit

4

a Subcontracting Report and Summary Subcontracting Report to the Administrative Contracting Officer. *Id.* at p. 7. On a contract-by-contract basis, Docupak was also required to submit subcontractor information to the U.S. Government. *Id.* at p. 8.

The National Guard Bureau also required the submission of periodic reports, studies and surveys by Docupak to determine the extent of compliance of the Small Business Subcontracting Plan. *Id.*, Appendix A. Finally, Docupak was also required to submit a Quality Control Plan to the National Guard Bureau, which included the reporting and tracking of actions to ensure the effectiveness of the contract. Gov't Ex. 12(b). Thus, the nature and extent of the federal government's control over the G-RAP funds was commensurate with controls that the Ninth Circuit has previously deemed sufficient for section 641. *Kranovich*, 401 F.3d at 1114; *Faust*, 850 F.2d at 579–80.

Based on the testimony presented by the Government, the exhibits admitted into evidence, and viewing the evidence in the light most favorable to the Government, the court finds that there is sufficient evidence that the money in question belonged to the United States and therefore, there is sufficient evidence to support the jury's finding of guilt.

**b. Count 2: Aggravated Identity Theft**

In order for the Defendant to be found guilty of Count 2, Aggravated Identity Theft, the court instructed the jury that the Government had to show beyond a reasonable doubt, that:

(1) First, the defendant knowingly possessed or used without legal authority a means of identification of another person;

(2) Second, the defendant knew that the means of identification belonged to a real person; and

(3) Third, the defendant did so during and in relation to theft of government money in violation of Section 641 of Title 18 of the United States Code.

*See* ECF No. 128, at 12.

The Defendant is not contesting the sufficiency of the evidence as to elements 1 and 2. *See generally* Def.'s Mot., ECF No. 157. Therefore, the court will only address element 3. The Defendant argues that "because a finding of guilt as to Count 1 of the Indictment is a necessary predicate to a finding of guilt as to Count 2, a failure to prove Count 1 necessarily destroys Count 2." ECF No. 157, at 1. As discussed *supra*, the court finds that there is sufficient evidence presented as to Count 1. Accordingly, the court finds that element 3 of Count 2 is met.

### III. CONCLUSION

The court finds that the Government presented evidence sufficient to support a jury's guilty verdict on Count 1, Theft of Government Property, in violation of 18 U.S.C. §§ 641, and Count 2, Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2. Accordingly, the court **DENIES** the Defendant's motion for a judgment of acquittal.

**IT IS SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
  **Chief Judge**
**Dated: Mar 23, 2016**